1
2
3                                                              JS - 6
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   GILBERTO DIAZ MORENO,           )    CASE NO. CV 13-2879 SVW
12                                    )
            Plaintiff &              )    ORDER GRANTING
13          Counterclaim Defendant,  )    DEFENDANTS' MOTIONS FOR
                                     )    SUMMARY JUDGMENT
14          v.                       )    [40, 44]
                                     )
15   UMG RECORDINGS, INC., et al.    )
                                     )
16          Defendant &             )
            Counterclaimants.        )
17   ————————————————————————————————)

18   **I.    Introduction**

19        Plaintiff Gilberto Diaz Moreno ("Diaz") claims he is the owner of the

20   trademark "Aliados De La Sierra," the name of a Duranguense musical group that

21   was formed in 2007 and enjoyed considerable success for several years.  On July

22   20, 2010, the United States Patent and Trademark Office ("PTO") granted Diaz a

23   registration of the Aliados trademark for use on pre-recorded CDs of musical

24   compilations.  On April 24, 2013, Diaz initiated this action against defendants

25   UMG Recordings, Inc., and Universal Music Group Distribution, Corp. ("UMG")

26   alleging trademark infringement, counterfeiting, and dilution in violation of the

27   Lanham Act.  15 U.S.C. §§ 1114, 1116, 1125.  In its counterclaim against Diaz,

28   UMG seeks cancellation of the trademark registration on the ground that it was

procured by fraud and also on the ground that Diaz had not used the mark in commerce when he requested registration.  15 U.S.C. §§ 1064, 1119, 1120.

UMG moves for summary judgment on Diaz's claims and on its counterclaim.  Having considered the parties' briefs in support of and in opposition to the motions and the arguments of counsel at the hearing on this matter, the Court concludes that UMG is entitled to summary judgment both on Diaz's claims of trademark infringement and on its counterclaim.

## II.   Legal Standard

Federal Rule of Civil Procedure 56 requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir. 1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  The moving party may satisfy this burden by "'showing'— that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  Once the moving party has met its initial burden, the nonmoving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial.  *See id.* at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  Only genuine disputes over facts that might affect the outcome of the suit under the governing law — *i.e.*, "where the evidence is such that a reasonable jury could return a verdict for the nonmoving party"— will preclude entry of summary judgment.  *See Anderson*, 477 U.S. at 248.

2

### III.   Diaz's Trademark Claims

#### A.   Infringement & Counterfeiting Claims

"A showing of likely buyer confusion as to the source, origin, or sponsorship of goods is part of a cause of action for infringement of a registered trademark." *Monte Carlo Shirt, Inc. v. Daewoo Int'l (Am.) Corp.*, 707 F.2d 1054, 1058 (9th Cir. 1983). Because genuine goods do not create any such confusion, "[t]rademark law generally does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent." *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1510 (9th Cir. 1987). It is undisputed that Diaz alleges that UMG "sold genuine goods without his consent," and that "the goods that [Diaz] claims are his goods are the same goods that he claims are infringing his trademark." (Dkt 52 ¶¶ 47-48.) Defendants have carried their initial burden under *Celotex* of pointing out that there is no evidence of any likelihood of confusion because the music marketed and distributed by UMG is genuine: it is music produced by the Aliados De La Sierra group.

The burden thus shifts to Diaz to identify admissible evidence of confusion. Diaz has failed to do so. In response to UMG's Undisputed Fact No. 45 ("There is no evidence of consumer confusion."), Diaz simply asserts that it is disputed because "There is confusion as to wholesalers, distributors, retailers," and "[d]iscovery is continuing and ongoing." (Dkt 52 ¶ 45.) But discovery is no longer ongoing, and Diaz has not argued that summary judgment should be denied under Rule 56(d). *Cf. Tatum v. City & County of San Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006) (party requesting additional time to oppose summary judgment motion must "identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment."); *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1026 (9th Cir. 2006) (party must also demonstrate it diligently pursued previous discovery opportunities). Therefore, UMG is entitled to summary judgment on the trademark

1  infringement and counterfeiting claims because Diaz has "failed to produce any

2  admissible evidence tending to show a likelihood of confusion." *Applied*

3  *Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007).

4  **B.   Dilution Claim**

5  "By contrast to trademark infringement, the injury from dilution usually

6  occurs when consumers *aren't* confused about the source of a product . . . ."

7  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 903 (9th Cir. 2002).  The term

8  "dilution" in the Lanham Act "refers to the 'whittling away of the value of a

9  trademark' when it's used to identify *different products*."  *Id.* (quoting 4 J. Thomas

10  McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24.67, at 24-120; §

11  24.70, at 24-122 (2001)) (emphasis added).  There is no evidence of dilution here

12  because Diaz admits that the Aliados mark is being used by UMG to identify

13  precisely the same goods that Diaz claims are his own.  (Dkt 52 ¶ 48.)  UMG is

14  therefore entitled to summary judgment on the dilution claim.

15  **IV.   UMG's Counterclaim for Cancellation of the Trademark**

16  To succeed on its claim for cancellation of the Aliados mark based on fraud,

17  UMG "must adduce evidence of (1) a false representation regarding a material fact;

18  (2) [Diaz's] knowledge or belief that the representation is false; (3) [Diaz's] intent

19  to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the

20  misrepresentation; and (5) damages proximately caused by that reliance." *Hokto*

21  *Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085, 1097 (9th Cir. 2013) (citing

22  *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990)).  UMG "bears a

23  heavy burden of demonstrating that a trademark should be cancelled," and a

24  material false representation in Diaz's trademark application is grounds for

25  cancellation only if UMG proves the other four factors.  *See id.*

26  UMG argues Diaz committed fraud on the PTO by stating he was using the

27  mark in commerce as early as March 28, 2007, when in fact the band's first album

28  was released in November of that year.  This was not a material misstatement,

however, because regardless of when in 2007 the mark was first used, it was used prior to Diaz's 2009 trademark application.[1]  *See Pony Express Courier Corp. of America v. Pony Express Delivery Service*, 872 F.2d 317, 319 (9th Cir. 1989) ("The claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date.").  UMG's other arguments for fraud are based on its contention that Jose Serrano Montoya ("Serrano") validly licensed the mark to others, but this depends on the resolution of factual disputes over the authenticity of disputed documentary evidence and Serrano's authority to unilaterally license the mark without Diaz's consent.  *Cf. Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th Cir. 2006) (trademark applicant's statement that no other person has right to use mark does not require applicant to disclose "persons whom he may have heard are using the mark *if he feels that the rights of such others are not superior to his*.") (emphasis original, citation and internal quotation marks omitted).

However, it is unnecessary to resolve these factual disputes because the trademark is independently subject to cancellation based on the fact that Diaz never used the mark on CDs in commerce.  "Cancellation of a mark's registration within the initial five years of registration may be based upon any ground which could have prevented registration initially."  *Int'l Mobile Machines Corp. v. Int'l Tel. & Tel. Corp.*, 800 F.2d 1118, 1119-20 (Fed. Cir. 1986); 15 U.S.C. § 1064(1).  The mark was registered on July 20, 2010, and UMG's counterclaim was filed within five years of that date.  The Lanham Act permits registration of marks only by "[t]he owner of a trademark used in commerce."  15 U.S.C. § 1051(a).  "It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the

---

[1] There can be no damages from any misstatements made in the failed 2007 and 2008 applications, as these did not result in registration of a trademark.

1   first to actually use the mark in the sale of goods or services." *Rearden LLC v.*

2   *Rearden Commerce, Inc.*, 683 F.3d 1190, 1203 (9th Cir. 2012) (citation and

3   internal quotation marks omitted).  Here, the relevant class of goods is prerecorded

4   CDs featuring musical compilations.  UMG asserts that "Diaz has never used CDs

5   in commerce at any time," pointing to Diaz's deposition testimony that he never

6   manufactured, distributed, or sold any CDs, as well as his responses to

7   interrogatories stating that the only parties who have manufactured or sold Aliados

8   music are UMG and iTunes.  (Dkt 46 ¶ 35.)  Diaz contends this fact is disputed,

9   citing other portions of his own deposition testimony.  (Dkt 55 ¶ 35.)  However,

10  Diaz's testimony does not support the conclusion that he used the Aliados mark on

11  CDs in commerce.  The cited portions of his testimony instead support Diaz's

12  allegations that he believed in good faith that he was the owner of the mark, that he

13  did not intend to mislead the PTO in his application, and that he was mistaken in

14  stating in his application that he was registering the CDs as a product rather than

15  just registering the Aliados name.  (*See id.* (citing Dkt 54-2 (Lopez Decl. Ex. 1) at

16  151:14-21; 152:8-11; 155:14-16; 159:1-15; 160:19-25; 161:1-3); *see also* Dkt 54

17  (Opp'n) at 15-16, 21-22 (explaining Diaz's actions and intentions).)  This

18  testimony is relevant to UMG's fraud argument, but it does not create a genuine

19  factual issue over whether Diaz was "[t]he owner of a trademark used in

20  commerce," 15 U.S.C. § 1051(a)(1), at the time that he submitted his application

21  for trademark registration.  Diaz fails to address this argument in his opposition to

22  UMG's motion for summary judgment on its counterclaim.  (*See* Dkt 54.)

23      In view of the absence of any genuine factual dispute over whether Diaz had

24  the right to register the Aliados mark with the PTO for use on goods in

25  International Class 9, and Diaz's failure to respond to UMG's argument on this

26  point, UMG is entitled to summary judgment on its counterclaim.

27

28

**V.     Order**

1.  Pursuant to Federal Rule of Civil Procedure 56, the Court orders that judgment be entered in favor of defendant UMG on plaintiff's complaint and that judgment be entered in favor of counterclaimant UMG on its claim for cancellation of trademark registration.

2.  Pursuant to 15 U.S.C. § 1064, plaintiff's trademark registration for "ALIADOS DE LA SIERRA" (United States Patent and Trademark Office Registration No. 3,821,709, dated July 20, 2010) is hereby cancelled.

**IT IS SO ORDERED.**

Dated:  April 24, 2014

_____
STEPHEN V. WILSON
United States District Judge